IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01026-LTB-CBS

ERINE L. CALBART,
    Plaintiff,
v.

DENVER SHERIFF CAPT. SAUER,
DENVER SHERIFF SANTANGELO,
DENVER SHERIFF PACHCO, and
DEPUTY SHERIFF ESPINOZA
    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Craig B. Shaffer

    THIS MATTER comes before the court on "Defendants' Motion to Dismiss Plaintiff's Prisoner Complaint" ("Motion to Dismiss") (doc. #21) and attached exhibits, filed July 28, 2011. Pursuant to the Memorandum dated July 28, 2011 (doc. #22) this matter was referred to the Magistrate Judge. The *pro se* Plaintiff, Ernie Calbart, filed his Response (doc. #36) with attached exhibits on August 16, 2011. On September 1, 2011, Defendants' filed their Reply (doc. #40).

### STANDARD OF REVIEW

    The parties' briefs rely upon documents not attached to or incorporated in the Amended Complaint. "A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'" *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). Typically, if the court decides to convert a Rule 12(b) motion into a Rule 56 motion, it must provide parties with notice to avoid unfair surprise. *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir.

1

1986). However, "when a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion. *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) (citation omitted). Because both parties have attached such documents they are already on notice that the court may treat the motion to dismiss as a motion for summary judgment even without giving formal notice of conversion. The court will treat the Defendants' Motion to Dismiss as one for summary judgment and analyze it as provided in Rule 56.

Having carefully considered the arguments presented in the parties briefs, as well as applicable case law, the court recommends that Defendants' Motion to Dismiss, converted to a motion for summary judgment, be granted.

## BACKGROUND

The claims in the Amended Complaint arise from events occurring on February 20 and 21, 2011, at the Denver Detention Center, operated by the Denver Sheriff Department, where Plaintiff Ernie Calbart ("Mr. Calbart") was a pretrial detainee. Mr. Calbart alleges that on February 20, 2011, he was threatened by two inmates. *See* Amended Complaint ("AC") (doc. #7, at page 4 of 9). Plaintiff states that after receiving these threats, he spoke with Sheriff Lipton, who gave him a grievance form, which Mr. Calbart used to request to be moved to another cell. *Id.* Plaintiff further alleges that on February 21, 2011, he had a meeting with Defendants Sauer, Santangelo, Pachco,[1] and Espinoza about the February 20 incident and requested to be moved. *Id.* Mr. Calbart states that Defendant Santangelo told him to see Sergeant Autsin [sic], who is in charge of moving inmates. *Id.* Plaintiff alleges that at 4:00 pm

---

[1] Defendants' "Reply to Response to Motion to Dismiss Plaintiff's Prisoner Complaint" ("Reply") (doc. #40) indicates that the correct spelling should be Pacheco. However, the court will refer to Sheriff Pacheco as "Defendant Pachco," which is consistent with all other pleadings and the court's caption.

on February 21, [2] he was attacked by one of the inmates that had threatened him the previous day.

## ANALYSIS

> Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. A dispute is "genuine" if the issue could be resolved in favor of either party. A fact is "material" if it might reasonably affect the outcome of the case.
> A movant who does not have the burden of proof at trial must show the absence of a genuine fact issue. By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. All the evidence must be viewed in the light most favorable to the party opposing the motion. However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.

*Wausau Bus. Ins. Co. v. U.S. Motels Mgmt., Inc.*, 341 F. Supp. 2d 1180, 1182-83 (D. Colo. 2004) (citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

Defendants contend that Mr. Calbart failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). "Under the holding of *Jones v. Bock*, 549 U.S. 199 (2007), exhaustion is an affirmative defense that must be raised by the

---

[2] In the AC Plaintiff alleges that he was attacked on February 21, 2011, however, the Incident Report (*See* Exhibit B-1 (doc. #21-2, page 4 of 4), attached to the Sauer Affidavit) indicates that the alleged attack occurred on February 22, 2011. Because the dates are a day apart and the actual date does not affect the court's conclusion, the court will adopt Plaintiff's date.

3

defendant." *Blay v. Reilly*, 2008 WL 2020286, at *1 n. 1 (D. Colo. May 9, 2008). Defendants argue that "Mr. Calbart never wrote a letter to the Division Chief or the Director of Corrections concerning his Inmate Grievance No. 10 94020." *See* Motion to Dismiss (doc. #21, at page 6 of 9). Defendants have submitted evidence pertaining to Plaintiff's failure to exhaust administrative remedies. As Defendants' Motion has been properly supported, the burden shifts to Plaintiff to show, by tendering competent evidence, that summary judgment is not proper.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1977e(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Even where the "available" remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731 (2001) (holding that even where an inmate sought money damages and the grievance process did not permit such awards, exhaustion was required as long as there was authority to take some responsive action)). The PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided and must comply with all the deadlines and other procedural rules prior to filing a federal lawsuit. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford*, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones*, 549 U.S. at 210-12 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion must occur before the filing of the lawsuit, not while it is pending. *See Porter*, 534 U.S. at 523-25. *See also Jernigan*, 304 F.3d at 1032-33 ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."); *Perez v. Hudson*, 2009 WL 1922574, at *2 (E.D. Tex. 2009) ("Claims should be dismissed in cases where an inmate filed a lawsuit without waiting for the process to be completed.") (citation omitted). A prisoner does not comply with the exhaustion requirement by exhausting available remedies during the course of litigation. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). In this case, the court must determine whether Mr. Calbart met his obligation under PLRA by completing each step in the Grievance Process; if he has not, this action must fail.

The Denver Sheriff Department Inmate Handbook ("Inmate Handbook"), provided to all inmates, mandates a specific multi-step grievance procedure. *See* Exhibit A-1 (doc. #21-1, pages 5-10 of 11), attached to the Gillespie Affidavit. The first step of the grievance procedure requires the inmate to deliver a completed written grievance to a supervisor. The grievance should be addressed to the Operations Major, and must include the following information: the date and time of the incident; a "specific statement detailing the act or condition giving rise to the grievance;" a "specific remedy for the grievance:" and the inmate's signature, housing location, and book-in number. The inmate must file his grievance within ten calendar days of

the incident in which the inmate was aggrieved.  The Operations Major is expected to provide a written dated response within ten working days of receipt of the grievance.  Step two of the grievance procedure requires the inmate to write a sealed letter to the Division Chief stating the specific grievance and all previous steps the inmate has taken, including all previous answers received.  The Division Chief should provide a written dated response within ten working days of receipt of the appeal.  Thereafter, if the inmate is still aggrieved, the inmate must write a personal letter to the Director of Corrections.  "The Director will make the final resolution and will provide a written, dated response within 10 working days of receipt of the appeal."  *Id.* at 8-9.

Defendants assert that because Mr. Calbart has failed to exhaust administrative remedies, his Amended Complaint should be dismissed.  In support of this assertion, Defendants submitted Plaintiff's Grievance Form No. 10-94020, in which Mr. Calbart states that he was threatened by other inmates and requested to be moved to 4D-B (the other side of 4D).  *See* Exhibit A-2 (doc. #21-1, at page 11 of 11), attached to the Gillespie Affidavit.  It is noted on Grievance Form No. 10-94020 that Mr. Calbart received a response on February 21, 2011, which is confirmed by Plaintiff.  *See Id.* and Response to Motion to Dismiss Prisoner's Complaint ("Response") (doc. #36, at page 3 of 44).  Therefore, Plaintiff had ten working days from February 21, 2011, to complete Step Two of the grievance process.  The evidence before the courts shows that Mr. Calbart never completed Step Two of the grievance process as to Grievance No. 10-94020.

Plaintiff states that he filed a second grievance on February 22, 2011, but gives no grievance number.  *See* Response (doc. #36, at para. 6, page 4 of 44).  Of the attachments to Plaintiff's Response, only one grievance form is dated February 22, 2011, Grievance No. 10-

94021, which states that Mr.Calbart was attacked by one of the Tier Porters that had previously threatened him. *See* Response (doc. #36, at page 18 of 44). In Grievance No. 10-94021 Plaintiff requests to be moved back to 4D. *Id.* Mr. Calbart states that as of August 15, 2011, he had not received a response to Grievance No. 10-94021. *Id.* at 4. On March, 14, 2011 ("March 4 Letter"), Plaintiff wrote a letter to Chief Diggans, "appeal[ing] Grievance No. 10-94021."[3] *See Id.* at 13. The March 4 Letter mentions Plaintiff "received a response [to] Grievance No. 10-94330," however, the letter does not specifically state that he is appealing Grievance No. 10-94330. Plaintiff also attaches a letter dated April 1, 2011 ("April 1 Letter"), addressed to Director Wilson, in which Mr. Calbart states that he is "not receiving a response to [ ] Grievance No. 10-94330." *See Id.* at 14. Of the other attachments to Plaintiff's Response some are duplicates and some are Grievances related to other matters or incidents not related to the claims of this lawsuit.

It is undisputed[4] that Mr. Calbart has failed to exhaust administrative remedies as to Grievance No. 10-94020. Plaintiff has also failed to exhaust as to Grievance No. 10-94021, because Mr.Calbart never completed Step Three. Furthermore, the court concludes that Plaintiff has failed to exhaust as to Grievance No. 10-94330; and that even if Plaintiff did exhaust as to Grievance No. 10-94330, that Grievance is not directly related to the claims in this case. Mr. Calbart's claims arise out of an alleged attack that occurred on February 21, 2011. There are two possible bases for Plaintiff's failure to protect claims: (1) Defendants' failure to move Plaintiff after learning about the alleged threats; or (2) Sheriff Gilmore and Sheriff Bennett, "pop[ping] [Plaintiff's] door open," which resulted in the alleged assault.

---

[3] Plaintiff attaches a second letter addressed to Chief Diggans, dated August 9, 2011, appealing Grievance Form No. 10-93711, which is unrelated to the claims in this case.
[4] Contrary to the requirements of Fed. R. Civ. P. 56(e), Mr. Calbart's Response does not address or present evidence to refute the specific "undisputed facts" set forth in Defendants' Motion to Dismiss. Under the circumstances, Rule 56(e) permits the court to "consider the fact undisputed for the purposes of the motion."

While Plaintiff does not state the basis of his claim, because Sheriffs Gilmore and Bennett are not named defendants in this lawsuit, the court concludes that Plaintiff's claim is based on Defendants' failure to move him to the other side of 4D.  First, if as stated in the Grievance No. 10-94330, it "is an appeal to Grievance No. 10-94020," this is not the proper procedure for appealing a Grievance.  *See Id.* at 16; s*ee also* Exhibit A-1 (doc. #21-1, pages 9 of 11), attached to the Gillespie Affidavit.  Alternatively, if the court construes Grievance No. 10-94330 to be a new grievance for a failure to protect after the attack occurred, that is not the basis of Plaintiff's claim, and therefore, the Grievance is unrelated to the claims in this case.  Second, the court finds that the language in the March 4 letter and the April 1 Letter is insufficient to qualify them as Step Two and Three respectively.  Therefore, Mr. Calbart has failed to exhaust his administrative remedies as to Grievance No. 10-94330.

Although the court finds that Mr. Calbart has failed to exhaust administrative remedies, the court recognizes that the facts are not entirely clear as to exhaustion.  Therefore, the court also concludes that Plaintiff's claims should be dismissed for failure to establish a triable issue of material fact concerning an Eighth Amendment violation.  Fed. R. Civ. P. 56(a).

Mr. Calbart's first claim is against Defendants Sauer, Santangelo, Pachco, and Espinoza for a Fourteenth Amendment violation.  Plaintiff's second claim is for an Eighth Amendment violation against Defendant Sauer.  To the extent that Mr. Calbart brings his claims pursuant to the Eighth and Fourteenth Amendments, he has not specifically alleged whether he was a pretrial detainee or a convicted prisoner when the events forming the basis of this lawsuit occurred.  "Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment.  In determining whether a [plaintiff's] rights were violated, however, we apply an analysis identical to that applied in the Eighth Amendment cases brought pursuant to § 1983."

*Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir. 1999) (internal citations omitted). *See also Medina v. Petross*, 2010 WL 1258083, at * 6 (D. Colo. Feb. 25, 2010) ("[C]ourts apply an analysis identical to that applied in Eighth Amendment cases in determining whether a pretrial detainee's rights were violated."). Therefore, the court will analyze Plaintiff's claims as a claim for an Eighth Amendment violation against all Defendants.

"To establish a cognizable Eighth Amendment claim for failure to protect, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm the objective component and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). In addition to the objective and subjective elements, a plaintiff must produce evidence of serious or significant injury resulting from the challenged cruel and unusual prison conditions. Something more than a *de minimis* injury is required. A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner asserting a claim for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference. *Id.*

Plaintiff has presented no facts that show an objectively serious injury. Mr. Calbart provides no factual allegations regarding the severity of the attack or any injuries sustained during such attack. Under the facts presented to the court, Mr. Calbart fails to demonstrate an Eighth Amendment violation. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (Eighth Amendment's prohibition of cruel and unusual punishment "does not impose constitutional liability on prison officials for every injury suffered by an inmate. First, the alleged injury or deprivation must be sufficiently serious."); *Villarreal v. Harrison*, No. 99–

1268, 201 F.3d 449, 1999 WL 1063830, at *3 (10th Cir. Nov. 23, 1999) (unpublished) (finding no Eighth Amendment violation by a prison official who classified an inmate as a suspected gang member, noting that there was no evidence the plaintiff was actually harmed by other inmates as a result of the classification). Given that Mr. Calbart has failed to meet his burden regarding the threshold objective element for establishing an Eighth Amendment violation, the court need not consider whether a dispute remains regarding the subjective element of the Eighth Amendment analysis. Nevertheless, the court notes that considering the evidence available on this record, there is no evidence that deliberate indifference attributed to Defendants contributed to or resulted in injury to Mr. Calbart.

Accordingly,

IT IS RECOMMENDED that Defendants' Motion to Dismiss Plaintiff's Prisoner Complaint" (doc. #21), converted to a motion for summary judgment, be GRANTED and summary judgment entered on the Amended Prisoner Complaint (doc. #7) in favor of Defendants Sauer, Santangelo, Pachco, and Espinoza and against Plaintiff, with each party to bear his, her, or its own costs and attorney fees. Further, IT IS ORDERED that:

1. Plaintiff's "Motion to Request Investigation Report" (filed October 18, 2011) (doc. # 56) is DENIED in light of this Recommendation.

2. Plaintiff's letter "asking the Judge to step in and have the Denver Sheriff answer my letters about the investigation . . ." (filed January 24, 2012) (doc. # 69) is DENIED in light of this Recommendation.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999). (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morals-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 8th day of March, 2012.

BY THE COURT:

　　　s/Craig B. Shaffer　　
United States Magistrate Judge